IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Action No. 10-0135 |
| ) | |
| RAYMOND BROWN, ) | |
| Defendant. ) | |

MEMORANDUM

Gary L. Lancaster,  June 16, 2011
Chief Judge.

This is a criminal prosecution. Raymond Brown, who has not pled guilty to, nor been convicted of, any crime, has asked this court to determine his potential term of imprisonment if convicted of possessing with the intent to distribute 14.9 grams of crack cocaine [doc. no. 30].[1] In essence, Brown is asking this court to decide whether, if found guilty, it will apply the Fair Sentencing Act at his sentencing, or will calculate his sentence by applying the law as it existed prior to the FSA's passage. For the reasons set forth below, we hold that we will apply the FSA to Brown at sentencing.

---

[1] We consider Brown's motion to present a justiciable case or controversy for which there are tangible consequences with respect to Brown's Sixth Amendment rights. U.S. CONST. amend. VI; FED. R. CRIM. P. 11.

I.  FACTUAL BACKGROUND

   A.  The FSA

On August 3, 2010, the President signed the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010) ("FSA"). The FSA, among other things, reduced the ratio between crack and powder cocaine from 100:1 to 18:1.[2] United States v. Douglas, 746 F.Supp.2d 220, 224 (D. Me. 2010). The gross disparity in treatment of these two forms of cocaine was based on the now disproven assumption that crack cocaine is more addictive and more closely associated with violence than cocaine in its powder form. See, e.g., 155 CONG. REC. S10490-93 (daily ed. Oct. 15, 2009) (statements of Sens. Durbin, Sessions, Leahy, and Specter), 2009 WL 3319524. The United States Sentencing Commission has consistently reported to Congress that crack cocaine convictions are statistically higher among African-Americans, and that the previous law resulted in a marked racial disparity in federal drug sentencing. See Douglas,

---

[2] Pre-FSA law imposed a five-year mandatory minimum sentence for 5 grams of crack or 500 grams of powder cocaine; a 100:1 ratio. 21 U.S.C. § 841(b)(1)(B)(ii) and (iii) (1999). Under the FSA, a five-year mandatory minimum sentence is imposed for 28 grams of crack or 500 grams of powder cocaine, which is roughly an 18:1 ratio. Fair Sentencing Act of 2010, § 2(a)(2) and 21 U.S.C. § 841(b)(1)(B)(ii) (1999).

746 F.Supp.2d at 222 (citations omitted). Mr. Brown is an African-American.

The FSA gave the United States Sentencing Commission emergency authority to promulgate guidelines, policy statements, or amendments provided for in the FSA and to make such conforming amendments to the Federal Sentencing Guidelines as necessary to achieve consistency with other guideline provisions and applicable law. Fair Sentencing Act of 2010, § 8. Pursuant to this statutory authority, less than ninety (90) days after President Obama signed the FSA, the Sentencing Commission enacted emergency amendments to those sections of the Federal Sentencing Guidelines that were affected by the FSA. U.S. SENTENCING GUIDELINES MANUAL supp. (2010). These amendments, among other things,[3] adjusted the Drug Quantity Table in USSG § 2D1.1 to account for the FSA's reduction of the crack to powder cocaine ratio from 100:1 to 18:1. Id., reason for amend. at 42-43. Under the FSA, the Sentencing Commission must report to Congress no later than August 3, 2015 "regarding the impact of the changes in Federal sentencing law under

---

[3] It is worth noting that these amendments did not uniformly decrease punishment and penalties for defendants convicted of drug trafficking crimes. Instead, the FSA creates sentencing enhancements for acts of violence and bribery of a law enforcement officer, to name a few. Fair Sentencing Act of 2010, §§ 5, 6.

this Act and the amendments made by this Act." Fair Sentencing Act of 2010, § 10.

B. <u>Brown's Indictment and Sentencing</u>

On July 20, 2010, a Federal Grand Jury returned a five-count indictment against Raymond Brown. Counts 1 through 4 of the indictment charged Brown with distributing, and possessing with the intent to distribute, less than 5 grams of crack cocaine on various dates between August 12, 2009 and January 8, 2010.[4] Count 5 charged Brown with possessing with the intent to distribute 5 grams or more of crack cocaine on March 12, 2010. There is no dispute that Brown possessed 14.9 grams of crack cocaine on March 12, 2010.

Under pre-FSA law, conviction at Count 5 would have subjected Brown to a mandatory minimum sentence of five (5) years imprisonment, and a statutory maximum of forty (40) years imprisonment. 21 U.S.C. § 841(b)(1)(B)(iii) (1999). Because Brown's statutory maximum period of imprisonment would have exceeded twenty-

---

[4] Under both the law as it existed before the FSA was passed and the FSA, Brown's conviction at Counts 1 through 4 would result in a base offense level of 32, § 4B1.1(b)(C), an adjusted offense level of 29, § 3E1.1, a criminal history category of VI, § 4B1.1(b), and a recommended guideline sentence of 151 to 188 months imprisonment.

4

five (25) years, his base offense level would be 34 under the Career Offender Guideline.[5] USSG § 4B1.1(b)(B). As a Category VI offender, USSG § 4B1.1(b), and after a three point reduction for acceptance of responsibility, USSG § 3E1.1, Brown's recommended sentence would be 188 to 235 months imprisonment.

However, under the FSA, because Brown possessed less than 28 grams of crack cocaine, he would be subject to a statutory maximum term of imprisonment of twenty (20) years, and no mandatory minimum sentence. Fair Sentencing Act of 2010, § 2(a)(2); 21 U.S.C. § 841(b)(1)(C). Accordingly, under the FSA, conviction at Count 5 would result in a base offense level of 32 pursuant to USSG § 4B1.1(b)(C), and after application of the other relevant guideline provisions, a recommended sentence of 151 to 188 months imprisonment.

Even though both of these potential recommended sentences would exceed the five-year statutory mandatory minimum required under pre-FSA law, the question of whether the FSA will apply to Brown at his sentencing is relevant because Brown's term of imprisonment could be reduced by at least three years if we apply 21 U.S.C. § 841(b)(1), as

---

[5] The parties have not disputed that Brown would be classified as a Career Offender under USSG § 4B1.1(a).

5

amended by the FSA, instead of as it existed before the FSA was passed.

II. LEGAL ANALYSIS

In answering this question we begin with the common law rule that a court is required "to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. School Bd. City of Richmond, 416 U.S. 696, 711 (1974). The Court of Appeals for the Third Circuit's holding that the FSA does not apply to those defendants who both committed their crimes and were sentenced prior to August 3, 2010 is in accordance with this general rule. United States v. Reevey, 631 F.3d 110 (3d Cir. 2010). At the time such defendants were sentenced, the FSA was not yet in effect.

However, Reevey does not answer the question presented here: whether the FSA applies to those defendants who committed their crimes before August 3, 2010 (the effective date of the FSA), but are sentenced after November 1, 2010 (the effective date of the emergency amendments to the Federal Sentencing Guidelines promulgated pursuant to the FSA). Id. at 115 n.5. Although many other

district courts and courts of appeals have answered this question, neither the United States Supreme Court nor the Court of Appeals for the Third Circuit has done so.

Upon review of the existing body of case law addressing the question before us now, we adopt the reasoning and analysis of Judge Hornby in United States v. Douglas, 746 F.Supp.2d 220 (D. Me. 2010), aff'd, 2011 WL 2120163 (1st Cir. May 31, 2011). Judge Hornby found that Congress expressly, or at least by implication, manifested its intent that all defendants sentenced after November 1, 2010 would be sentenced in accordance with the FSA. Douglas, 746 F.Supp.2d at 228-31. In doing so, Judge Hornby gave careful consideration to the title and preamble of the FSA as being an act "to restore fairness to Federal cocaine sentencing," and to Congress's "explicit grant of emergency guidelines authority" to the Sentencing Commission, and to Congress's "mandate of 'consistency' and 'conforming' amendments" in the text of the FSA, as well as to Congress's express language elsewhere establishing that the Sentencing Guidelines in effect on the day of sentencing control, 18 U.S.C. § 3553(a)(4)(A)(ii). Id.

In addition, we find that Congress further expressed its intent in the language of the FSA by directing the United States Sentencing Commission to report

7

to Congress no later than August 3, 2015 "regarding the impact of the changes in Federal sentencing law under this Act, and the amendments made by this Act." Fair Sentencing Act of 2010, § 10. Because the five-year statute of limitations on crimes affected by the FSA will not expire until August 2, 2015, such a report would be incomplete, at best, and incomprehensible, at worst, if the FSA were not yet being uniformly applied until after the report was due. 18 U.S.C. § 3282(a).

Because of this language in the FSA, we find that Congress expressly stated its intent that the FSA would apply to all defendants sentenced after November 1, 2010. As a result, the General Saving Statute, 1 U.S.C. § 109, which would have preserved pre-FSA penalties as to all defendants who committed their crimes before August 3, 2010, does not apply. United States v. Douglas, 2011 WL 2120163 at *3 (1st Cir. May 31, 2011) (Congress need not use "magical passwords", explicitly reference 1 U.S.C. § 109, or mention the term "retroactive" to override the General Saving Statute).

Such express language in the FSA distinguishes this case from those cases that some courts have found to foreclose the result we reach today. See e.g., Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653 (1974);

United States v. Jacobs, 919 F.2d 10 (3d Cir. 1990). Unlike the statutes considered in those cases, the FSA contains several express statements indicating Congress's intent to "restore fairness" and to apply the new 18:1 crack to powder ratio to those defendants sentenced after November 1, 2010. These express statements also explain why, in Reevey, the Court of Appeals found Douglas to be distinguishable and explicitly left open the question we answer today. Reevey, 631 F.3d at 115 n.5.

In finding that the FSA applies to Brown at sentencing, we need not interpret legislative history, nor otherwise deduce the intent of Congress. Instead, as of November 1, 2010, Congress's intent is explicit that federal cocaine sentencing would occur under the FSA and any related emergency amendments to the Sentencing Guidelines.[6]

Although we find Congress's intent to be express, we follow Judge Hornby in stating that even if the FSA does not "expressly provide" for its application to all sentencings occurring after November 1, 2010, it is

---

[6] If the above referenced language does not make Congress's intent express, it at least makes the FSA unclear. As such, under the rule of lenity, an ambiguous criminal statute must be construed in favor of the accused. United States v. Bass, 404 U.S. 336, 347-48 (1971); United States v. Barbosa, 271 F.3d 438, 455 (3d Cir. 2001); United States v. Douglas, 2011 WL 2120163 at *5 (1st Cir. May 31, 2011).

9

necessarily or fairly implied that the FSA "permits no further federal crack sentencings that are not 'fair'". Douglas, 746 F.Supp.2d at 231; see also Lockhart v. United States, 546 U.S. 142, 148 (2005) (Scalia, J., concurring)(finding that a subsequent Congress may exempt itself from statutory express statement requirements, such as is found in the General Saving Statute, by "fair implication", citing Marrero and Great Northern R. Co. v. United States, 208 U.S. 452, 465 (1908)); United States v. Fisher, 2011 WL 2022959 at *1-3 (7th Cir. May 25, 2011) (stating, in dissent from denial of petition for rehearing en banc, that language of the FSA by necessary implication supersedes the General Saving Statute).

On that point, although not necessary to our holding, we feel compelled to express our belief that sentencing a defendant under a law that Congress has explicitly found to be unfair would result in a manifest injustice. The context in which Congress enacted the FSA is clear. All empirical evidence upon which Congress relied in passing the FSA indicates that the 100:1 disparity in treatment between crack and powder cocaine discriminated against African-Americans. We will not sentence a defendant under a law that Congress has

10

explicitly stated is unfair and which we now know to be racially discriminatory and without any basis in fact.

III. CONCLUSION

For the foregoing reasons, we find that the FSA will apply to Brown at sentencing, should he be convicted. An appropriate order will be filed contemporaneously with this memorandum.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
v. ) Criminal Action No. 10-0135
)
RAYMOND BROWN, )
    Defendant. )

ORDER

AND NOW, this 16th day of June 2011, upon consideration of defendant's Motion for Determination of Applicable Range of Imprisonment as to Count 5, [Doc. No. 30], IT IS HEREBY ORDERED that the Fair Sentencing Act of 2010 will apply to Brown at sentencing, should he be convicted.

BY THE COURT:

s/ Gary L. Lancaster   , C.J.
Hon. Gary L. Lancaster,
Chief United States District Judge

cc: All Counsel of Record